IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JEFF MCGRAW, #Y38458,                         )<br>                                                                 )<br>           **Plaintiff,**                              )<br>     vs.                                                     )           Case No. 3:21-cv-00800-SMY<br>                                                                 )<br>MARY PEEKS,                                       )<br>A. DAVID,                                              )<br>WARDEN MITCHELL, and                   )<br>WEXFORD HEALTH SOURCES,       )<br>                                                                 )<br>           **Defendants.**                           ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Jeff McGraw, an inmate of the Illinois Department of Corrections currently incarcerated at Pontiac Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Shawnee Correctional Center. This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A. Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

### The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1): Plaintiff was shot fifteen times in 2013 and had bullet fragments removed from his bladder in 2013 and 2014. He saw a urologist for pain in his pelvic area and urinary retention while he was housed in the Cook County Jail in 2019. A CT scan revealed bullet fragments in his prostate. The urologist also diagnosed Plaintiff with prostatitis (inflammation of the prostate). He was given the option of surgery at that time or to wait until the bullet fragments migrated to a safer place for removal. Because of the potential issues that surgery on his prostate could cause, Plaintiff chose to wait.

Plaintiff submitted sick call requests for urinary retention and pelvic and penile pain while incarcerated at Shawnee Correctional Center. He submitted his first request in March 2020 and submitted seven requests before he was seen in October or November 2020. During a sick call visit with Mary Peeks, she ordered a urine test which will not detect prostate issues or show whether the bladder is functioning properly. Peeks was aware of Plaintiff's medical issues because she reviewed his medical records that show his diagnoses of prostatitis and chronic testicular pain. During Plaintiff's visits with Peek, she was hostile, rude, and unprofessional. Although she had the ability to refer Plaintiff to a physician and was aware of his medical issues, she failed to refer him until months after he initially saw her.

Plaintiff spoke with Warden Mitchell on December 4, 2020 while in the healthcare unit. He told the Warden he was in a lot of pain due to an enlarged prostate and he was not being treated properly. The Warden asked how long he had been in pain and then spoke with Peeks. Peeks told Warden Mitchell that she had referred Plaintiff to see Dr. David and he had an appointment on December 7, 2020. Plaintiff did not see Dr. David on that date, but did see Warden Mitchell and told him that he was still in extreme pain and had not seen the doctor. Warden Mitchell stated "oh well" and walked away. Warden Mitchell could have walked Plaintiff to healthcare to receive immediate attention but did not.

When Plaintiff saw Dr. David, he told him that he had researched his urination issues and believed he had an enlarged prostate. Dr. David did not perform any diagnostic testing or an examination to determine the cause of Plaintiff's symptoms, nor did he review Plaintiff's medical records regarding his previous treatment with urologists. Dr. David is a general practitioner, not a urologist, and made treatment decisions without referring Plaintiff to a urologist or other specialist.

In response to a grievance Plaintiff subsequently filed, Dr. David stated Plaintiff had no evidence of urinary retention, yet he had prescribed medication for urinary retention. The prescribed medication did not alleviate Plaintiff's issues and he continues to have urinary issues and pain in his pelvis, penis, and testicles.

Wexford Health Sources contracts with IDOC to provide medical care to inmates. Through the actions and inactions of its employees, the following unconstitutional policies and/or customs written and unwritten exist: 1) an inmate is required to see a nurse, who does nothing more than triage, twice before seeing a physician for a serious, diagnosed medical condition which allows pain to linger unnecessarily; 2) physicians who are general practitioners are able to deny access to specialist without a thorough investigation of an inmate's medical condition; 3) inmates with serious, diagnosed medical conditions are delayed treatment in hope that the issue will resolve itself; and 4) inmates are routinely denied CT scans, x-rays, and MRIs to save money which delays diagnosis of medical conditions.

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

Count 1: Eighth Amendment claim against Peeks, Dr. David, and Warden Mitchell for exhibiting deliberate indifference to Plaintiff's serious medical needs related to his prostatitis, urinary issues, and pain in the pelvic area, penis, and testicles.

Count 2: Eighth Amendment/*Monell* claim against Wexford Health Sources Inc. for exhibiting deliberate indifference to Plaintiff's serious medical needs based on its policies and/or customs of 1) requiring an inmate to see a nurse, who does nothing more than triage, twice before seeing a physician for a serious, diagnosed medical condition which allows pain to linger unnecessarily; 2) allowing general practitioners to deny access to specialist without a thorough investigation of an inmate's medical condition; 3) delaying treatment for inmates with serious, diagnosed medical conditions to wait and see if the issue will resolve itself; and 4) routinely denying CT scans, x-rays, and MRIs to save money which delays diagnosis

|  |  |
|---|---|
|  | of medical conditions, all of which resulted in a denial and/or delay of proper medical care for Plaintiff's prostatitis, urinary issues, and pain in the pelvic area, penis, and testicles. |
| Count 3: | State law medical negligence claim against Peeks, Dr. David, and Wexford Health Sources for delaying and/or denying proper medical care for Plaintiff's prostatitis, urinary issues, and pain in the pelvic area, penis, and testicles. |

Any claim that is mentioned in the Complaint but not addressed in this Order is dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

## Discussion

### Counts 1 and 2

Prison officials and medical staff violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state a claim, a prisoner must allege facts suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.* "[D]eliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015).

Plaintiff's allegations are sufficient to state a viable deliberate indifference claim in Count 1 against Nurse Peeks, Dr. David, and Warden Mitchell. Plaintiff also states a viable claim in Count 2 against Wexford (that medical care was denied and/or delayed as a result of Wexford's policies and practices). *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable for deliberate indifference if it had a policy or practice that caused the violation).

**Count 3**

Plaintiff asserts a state law medical negligence claim against Nurse Peeks, Dr. David, and Wexford. Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation,* 512 F.3d 921, 936 (7th Cir. 2008). Because Plaintiff's allegations of medical negligence derive from the same facts as his Eighth Amendment deliberate indifference claims in Counts 1 and 2, the Court will exercise supplemental jurisdiction over the claim.

An Illinois medical negligence claim requires the plaintiff to show: (1) the applicable standard of care; (2) the defendant breached the standard of care and was negligent; and (3) and the breach was a proximate cause of the plaintiff's injury. *Chambers v Igram*, 858 F.2d 351, 355 (7th Cir. 1988). Plaintiff's allegations are sufficient to proceed on a medical negligence claim against Nurse Peeks, Dr. David, and Wexford.[1]

**Disposition**

Count 1 will proceed against Mary Peeks, A. David, and Warden Mitchell. Count 2 will proceed against Wexford Health Sources. Count 3 will proceed against Mary Peeks, A. David, and Wexford Health Sources.

The Clerk shall prepare for Mary Peeks, A. David, Warden Mitchell, and Wexford Health Sources: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2)

---

[1] The Court notes that Plaintiff has not provided the affidavit and medical report required under Illinois state law, *i.e.*, 735 ILCS § 5/2-622. If he intends to proceed with this claim, Plaintiff must file an affidavit stating that "there is a reasonable and meritorious cause" for litigation of the medical malpractice claim, along with a physician's report in support of the affidavit. *See Young v. United States*, 942 F.3d 349 (7th Cir. 2019). His failure to do so is not dispositive of his claim at this point. *Id.* However, Plaintiff must comply with the requirements set forth in 735 ILCS § 5/2-622 before the Court considers summary judgment on the merits of the case.

Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days**

after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

Based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED: August 16, 2021**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answers, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.