IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JEFF MCGRAW, #Y38458, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:21-cv-00800-SMY-RJD |
| | ) |
| MARY PEEKS, et al., | ) |
| | ) |
| Defendants. | ) |

# REPORT AND RECOMMENDATION

**DALY, Magistrate Judge:**

This matter is before the Court on the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 32) filed by Defendants Mary Peeks, Alfonso David, and Wexford Health Sources, Inc. The motion has been referred to the undersigned (Doc. 39) pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation. It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law and **GRANT in part and DENY in part** the motion as detailed below.

## BACKGROUND

Plaintiff Jeff McGraw, an inmate of the Illinois Department of Corrections ("IDOC"), filed this *pro se* civil rights lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Shawnee Correctional Center ("Shawnee"). McGraw makes the following allegations in the Complaint (Doc. 1): McGraw was shot fifteen times in 2013 and had bullet fragments removed from his bladder in 2013 and

2014. Later, a CT scan revealed bullet fragments in his prostate. Because of the potential issues that surgery on his prostate could cause, McGraw chose not to have surgery.

McGraw was subsequently incarcerated at Shawnee Correctional Center where he submitted numerous sick call requests for urinary retention and pelvic pain. During a sick call visit with Mary Peeks in October or November 2020, she ordered a urine test. However, a urine test will not detect prostate issues or show whether the bladder is functioning properly. Peeks was aware of McGraw's medical issues because she reviewed his medical records that show his diagnoses of prostatitis and chronic testicular pain. During McGraw's visits with Peeks, she was hostile, rude, and unprofessional. Although she was aware of his medical issues and had the ability to refer him to a physician, she failed to refer him until months after he initially saw her.

McGraw spoke with Warden David Mitchell while in the healthcare unit on December 4, 2020. He told Warden Mitchell that he was in a lot of pain due to an enlarged prostate and he was not being treated properly. The Warden spoke with Peeks who told him that she had referred McGraw to see Dr. Alfonso David and he had an appointment on December 7, 2020. McGraw did not see Dr. David on that date, but he did see Warden Mitchell and told him that he was still in extreme pain and had not seen the doctor. Warden Mitchell stated "oh well" and walked away.

McGraw did not see Dr. David until January 2021 at which time he told Dr. David that he had researched his urination issues and believed he had an enlarged prostate. Dr. David did not perform an examination or diagnostic testing to determine the cause of McGraw's symptoms. Dr. David did not review McGraw's medical records regarding

this previous treatment with urologists or refer McGraw to a urologist or other specialist. In response to a grievance McGraw subsequently filed, Dr. David stated McGraw had no evidence of urinary retention, yet Dr. David had prescribed medication for urinary retention. The medication did not alleviate McGraw's issues and he continues to have urinary issues and pain in his pelvis.

Wexford Health Sources contracts with IDOC to provide medical care to inmates. Through the actions and inactions of its employees, the following unconstitutional policies and/or customs written and unwritten exist: 1) an inmate is required to see a nurse, who does nothing more than triage, twice before seeing a physician for a serious, diagnosed medical condition which allows pain to linger unnecessarily; 2) physicians who are general practitioners are able to deny access to specialist without a thorough investigation of an inmate's medical condition; 3) inmates with serious, diagnosed medical conditions are delayed treatment in hope that the issue will resolve itself; and 4) inmates are routinely denied CT scans, x-rays, and MRIs to save money which delays diagnosis of medical conditions.

Following screening of the Complaint under 28 U.S.C. § 1915A, McGraw is proceeding on the following claims (Doc. 9):

<div style="margin-left: 2em;">

Count 1:     Eighth Amendment claim against Peeks, Dr. David, and Warden Mitchell for exhibiting deliberate indifference to McGraw's serious medical needs related to his prostatitis, urinary issues, and pain in the pelvic area, penis, and testicles.

Count 2:     Eighth Amendment/*Monell* claim against Wexford Health Sources Inc. for exhibiting deliberate indifference to McGraw's serious medical needs based on its policies and/or customs of 1) requiring an inmate to see a nurse, who does

</div>

>            nothing more than triage, twice before seeing a physician for a serious, diagnosed medical condition which allows pain to linger unnecessarily; 2) allowing general practitioners to deny access to specialist without a thorough investigation of an inmate's medical condition; 3) delaying treatment for inmates with serious, diagnosed medical conditions to wait and see if the issue will resolve itself; and 4) routinely denying CT scans, x-rays, and MRIs to save money which delays diagnosis of medical conditions, all of which resulted in a denial and/or delay of proper medical care for McGraw's prostatitis, urinary issues, and pain in the pelvic area, penis, and testicles.

> Count 3:    State law medical negligence claim against Peeks, Dr. David, and Wexford Health Sources for delaying and/or denying proper medical care for McGraw's prostatitis, urinary issues, and pain in the pelvic area, penis, and testicles.

Defendants Peeks, David, and Wexford filed a motion for summary judgment arguing McGraw failed to properly exhaust his administrative remedies prior to filing this lawsuit (Doc. 32). Defendants present four grievances relating to the claims in the Complaint that McGraw submitted at all levels of the grievance process (Doc. 33). They contend that three of the grievances were not fully exhausted due to untimely appeals to the ARB and the fourth grievance was not exhausted prior to the filing of this lawsuit.

In response, McGraw asserts he submitted five relevant grievances and took all steps available to exhaust his grievances (Doc. 35). He contends that some of his appeals to the ARB were delayed due to circumstances beyond his control rendering the process unavailable.

In reply, Defendants maintain the fifth grievance submitted by McGraw is not relevant and was not fully exhausted prior to the filing of this lawsuit (Doc. 37). Further,

Defendants point out that an exhibit attached to McGraw's response was altered by him after the document was produced in discovery.

Pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the Court held an evidentiary hearing on the issue of exhaustion on April 4, 2022 (Doc. 42). McGraw and Counsel for Defendants appeared by video conference.

## FINDINGS OF FACT

*A. Grievance Records*

The five grievances submitted by the parties are set forth below:

Grievance 2020-11-108E, dated November 25, 2020 (Doc. 33-2, pp. 22-27): McGraw states that on November 17, 2020 he put in his ninth sick call request and that he has been seeking treatment for eight months. He has a history of bladder and prostate problems because he was shot and has prostatitis. He states he is being refused medical treatment by Mary Peeks and Alfonso David. Also, Peeks gave him a urine test which does not detect bladder or prostate function. He states Peeks is rude, unprofessional, and racist. He has urinary retention, urinary incontinence, enlarged prostate, and prostatitis that is not being properly treated. He seeks proper medical care, requests that Peeks be investigated for medical malpractice and racism, and requests to see a doctor for his medical issues. The grievance officer reviewed responses from Dr. David and Peeks and recommended the grievance be denied. The CAO concurred on January 20, 2021. The ARB received the appeal[1] on March 8, 2021 and returned the appeal without review

---

[1] On the exhibit submitted by Defendants, the Offender's Appeal section is blank and the document is bates-stamped MCGRAW ARB 0023 (Doc. 33-2, p. 23). McGraw submitted the same document with his

because it was received more than thirty days after the date of the CAO's decision.

Grievance 2020-12-42E, dated December 8, 2020 (Doc. 33-2, pp. 28-31): McGraw encountered Warden Mitchell in the healthcare unit on December 4, 2020 and told the Warden that he is in a lot of pain, has not received proper treatment, and has been refused treatment. He identified Peeks, who was present, as the person refusing him medical treatment. Warden Mitchell asked Peeks what was going on. Peeks stated she was not seeing McGraw, he had been referred to Dr. David, and he had an appointment on December 7, 2020. McGraw stated she was lying and had stated the same thing three weeks ago. The Warden stated he was not a doctor and he would have to take the word of Peeks. McGraw was not seen by a doctor on December 7, 2020, but did see the Warden that day. He notified the Warden that he had not seen a doctor and was still in pain. The Warden said "oh well" and walked away. The grievance officer reviewed a response from Dr. David and recommended the grievance be denied. The CAO concurred on January 13, 2021. The ARB received the appeal on March 8, 2021 and returned the appeal without review because it was received more than thirty days after the date of the CAO's decision.

Grievance 2020-12-84, dated December 16, 2020 (Doc. 33-2, pp. 26-27): McGraw grieves that he still has not received medical attention for his enlarged prostate and his pain is at a ten. A counselor returned the grievance on December 23, 2020 as a duplicate of grievance 2020-12-42. McGraw submitted the grievance for second level review (Doc

---

response, which includes the MCGRAW ARB 0023 bates-stamp, and the Offender's Appeal section is signed by him and dated February 17, 2021 (Doc. 35, p. 7). McGraw testified that all of the documents attached to his response were obtained from Defendants.

33-1, p. 14). The grievance officer's report for grievance 2020-11-108E states it is also a response to this grievance (Doc. 33-2, p. 23). The grievance officer reviewed responses from Dr. David and Peeks and recommended the grievance be denied. The CAO concurred on January 20, 2021. The ARB received the appeal on March 8, 2021 and returned the appeal without review because it was received more than thirty days after the date of the CAO's decision.

Grievance 092121, dated April 15, 2021 (Doc. 33-2, pp. 13-16):  McGraw went to Pontiac health care unit on April 14, 2021 for a follow-up on an x-ray. At that time, he discovered he has metal fragments in his pelvis, bladder, and scrotum, and would need surgery. He complained at Shawnee for seven months and is now finally receiving proper care. He filed several grievances complaining about inadequate care and excruciating pain and the grievances were denied (2020-11-108E, 2020-12-84, and 2020-12-42E). He states he now needs surgery which could have been avoided if he had received proper medical care. The grievance officer reviewed a response from the healthcare unit administrator regarding care provided by Dr. Tilden at Pontiac and recommended the grievance be considered moot. The CAO concurred on June 10, 2021. The Offender's Appeal section is signed and dated July 7, 2021. The ARB received the appeal on July 12, 2021 and returned the appeal because it was received more than thirty days after the date of the CAO's decision.

Grievance 092495, dated May 9, 2021 (Doc. 33-2, pp. 9-12):  McGraw grieves that he has received inadequate medical care from Dr. Tilden for three months and has been given inadequate pain medication. He contends Wexford should be shut down and

investigated. He requests adequate medical assistance and that Wexford be investigated. The grievance officer recommended the grievance be considered moot because McGraw was seen at UIC Urology on June 2, 2021 and was given different pain medication. The CAO concurred on August 12, 2021. The ARB received the appeal on August 23, 2021 and denied the appeal on August 26, 2021.

### B. *McGraw's written response and Pavey hearing testimony*

McGraw transferred from Shawnee to Pontiac on January 29, 2021 and was placed on quarantine status. His property was taken a few days before he left Shawnee and was sent to the Pontiac property office to be searched for a compliance check. His property was returned to him on February 17, 2021 and he sent all of his grievances for third level review by signing and dating the appeal section. When he gave his mail to a correctional officer, he was told his mail would not be processed until his quarantine status was lifted. He was sent to general population on February 19, 2021. When he wrote to personal property in early April 2021 asking about a delay in his property being mailed out, he was told the mailroom was roughly four weeks behind with limited staff.

## LEGAL STANDARDS

### A. *Summary Judgment*

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED.R.CIV.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once

a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013).

When a motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to proceed or to dismiss it for failure to exhaust. *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018).

### B. *The PLRA and Illinois Exhaustion Requirements*

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies prior to filing lawsuits in federal courts with regard to prison conditions. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). Administrative exhaustion "means using all steps that the agency holds out, and doing so properly." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). This is a mandatory rule that a court does not have discretion to waive. *Id.* at 93. "[A] suit filed by a prisoner before administrative remedies have been exhausted must

be dismissed." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). It is essential to keep the courthouse doors closed until administrative remedies have run their course. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

The Seventh Circuit requires strict adherence to the exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). However, an inmate is required to exhaust only those administrative remedies that are available to him. *See* 42 U.S.C. § 1997e(a). Administrative remedies become "unavailable" when prison officials fail to respond to a properly filed inmate grievance or when prison employees thwart a prisoner from exhausting. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809.

As an inmate in the Illinois Department of Corrections, McGraw was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, *et seq.* (2017). The regulations require an inmate to file his grievance with his counselor within 60 days of the discovery of an incident, occurrence, or problem that gave rise to the grievance. 20 ILL. ADMIN. CODE § 504.810(a). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the Chief Administrative Officer ("CAO"). 20 ILL. ADMIN. CODE § 504.840. If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance. *Id.* If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE § 504.840(c).

Administrative regulations require the grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). The Seventh Circuit has held that an inmate is required to provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

If the complaint is not resolved through the counselor, the grievance may be submitted to a grievance officer, who reports his or her findings and recommendations in writing to the CAO. 20 ILL. ADMIN. CODE § 504.830(e). The CAO then provides the inmate with a written decision on the grievance. *Id.*

If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the ARB. 20 ILL. ADMIN. CODE §504.850(a). The ARB must receive the appeal within thirty days of the date of the CAO's decision. *Id.* The inmate must attach copies of the responses from the grievance officer and CAO to his appeal. *Id.* The ARB submits a written report of its findings and recommendations to the Director, who then makes a final determination. 20 ILL. ADMIN. CODE § 504.850(d), (e).

## CONCLUSIONS OF LAW

Based on the evidence in the record and in consideration of the parties' arguments, the Court finds: (1) McGraw failed to exhaust grievances 092121 and 092495; (2) the grievance process became unavailable to McGraw for purposes of an appeal to the ARB

on grievances 2020-11-108E, 2020-12-84, 2020-12-42E; (3) grievances 2020-11-108E, 2020-12-84, 2020-12-42E do not address the claims against Dr. David and Wexford in this lawsuit; (4) grievances 2020-11-108E and 2020-12-42E address the claims against Mary Peeks in this lawsuit; and (5) the exhaustion requirement does not apply to the state law claim.

Grievances 092121 and 092495, which McGraw submitted after he transferred to Pontiac ("Pontiac grievances"), were not fully exhausted prior to the filing of this lawsuit on July 12, 2021. The Pontiac grievances were received at the ARB on July 12, 2021 and August 23, 2021. Because McGraw failed to allow the administrative process to run its course before filing this lawsuit, those grievances cannot serve to exhaust his claims. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) ("suit first, exhaust later approach is not acceptable).[2]

McGraw submitted grievances 2020-11-108E, 2020-12-84, 2020-12-42E at Shawnee ("Shawnee grievances") but submitted his appeals to the ARB after he was transferred to Pontiac. McGraw does not dispute that the Shawnee grievances were received by the ARB more than thirty days after the dates of the CAO's decisions. Instead, McGraw contends that factors outside his control precluded him from submitting timely appeals. Thus, the issue is whether the final step in the grievance process was unavailable to McGraw.

McGraw received the CAO's decisions, dated January 13 and 20, 2021, prior to his

---

[2] It is, therefore, not necessary to determine whether those grievances are relevant to the claims in this lawsuit.

transfer to Pontiac on January 29, 2021. According to McGraw, he did not receive his property at Pontiac until February 17, 2021 and he immediately gave his appeals to a correctional officer to be mailed to the ARB. He testified the correctional officer told him that due to his quarantine status his mail would not be processed until the quarantine was lifted, which was presumably February 19, 2021 when he was sent to general population. Additionally, McGraw submitted a Counseling Summary with his response that states the mailroom was roughly four weeks behind in early April 2021.

Defendants attack McGraw's credibility based on an apparent altered document submitted by McGraw. In the grievance documents submitted by Defendants, the Offender's Appeal section for grievances 2020-11-108E and 2020-12-84 is blank and the document is bates-stamped MCGRAW ARB 0023 (Doc. 33-2, p. 23). McGraw submitted the same document with his response, including the MCGRAW ARB 0023 bates-stamp, but the Offender's Appeal section is signed by him and dated February 17, 2021 (Doc. 35, p. 7). McGraw testified that the documents attached to his response were received from Defendants.

Defendants chose not to cross-examine McGraw on the altered document directly during the *Pavey* hearing. Yet, Defendants suggest the Court should find McGraw altered the document, infer an improper motive for the alteration, and find that McGraw is not credible. The Court agrees it is reasonable to infer the document was altered. It seems clear that the grievance was sent to the ARB without a signature and date from McGraw. However, the Court declines the invitation to make a credibility determination that results in Defendants' favor on the motion.

Regardless of whether McGraw attempted to mail his grievance on February 17 or a few days later, the grievance was received by the ARB on March 6. Plaintiff presented evidence that in April the mailroom was four weeks behind. While Defendants point out that the Counseling Summary stating the mailroom is four weeks behind is dated in early April 2021 and therefore does not cover the relevant time period, Defendants did not present any evidence regarding the delay and it is reasonable to infer that this delay occurred over some period of time. Practically speaking, the Court is aware that the IDOC prison mail system, at various times, experienced significant interruptions and delays as a result of the COVID-19 pandemic.[3] The Court notes that two grievances McGraw appealed to the ARB while at Shawnee, that are the closest in time to the relevant grievances, appear to have taken 29 and 34 days from the date of the Offender's Appeal to the date received by the ARB. The Offender's Appeal section for Grievance 2020-06-96 is signed and dated November 24, 2020, but the ARB did not receive it until December 23, 2020. The Offender's Appeal section for grievance 2020-07-56 is signed and dated January 26, 2021, but was not received by the ARB until March 1, 2021.

Defendants did not offer any testimony or other evidence to refute McGraw's assertions that the transfer, lack of access to his property, and delays in the mailroom are the reasons why his appeals to the ARB were untimely. The fact that McGraw may have later dated his appeal to reflect when he sent it is not the smoking gun Defendants believe

---

[3] *See Smith v. Brookhart*, No. 3:20-CV-00830-MAB, 2022 WL 306837, at *7 (S.D. Ill. Feb. 2, 2022) ("the Court is aware that the prison mail system, at this time, was experiencing significant interruptions and delays as a result of the onset of the COVID-19 pandemic").

it to be. Viewing the facts in the light most favorable to, and drawing all reasonable inferences in favor of, McGraw as the non-moving party, Defendants have not met their burden to show that the final step in the grievance process was available to McGraw.

Next, the Court must determine whether the content of the grievance was sufficient to cover the claims in this lawsuit. As the Ninth Circuit has articulated, "a prisoner must show that he attempted to exhaust his administrative remedies but was thwarted . . . In particular, [he] must establish . . . that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court . . . ." *Sapp v. Kimbrell*, 623 F.3d 813, 823–824 (9th Cir. 2010). Judges in this district have found the Ninth Circuit's rationale in *Sapp* to be persuasive and have adopted it. *See Anderson v. Thole*, No. 3:20-cv-00151-SMY, 2021 WL 2554111, at *2 (S.D. Ill. June 22, 2021).

The Shawnee grievances do not address or raise an issue regarding the claims against Wexford. Additionally, according to McGraw's Complaint, he did not see Dr. David until January 2021 and the Shawnee grievances were all submitted prior to that time. As such, the Shawnee grievances did not put prison officials on notice of the claims in this lawsuit against Wexford and Dr. David, which is what was required for McGraw to exhaust his administrative remedies. Accordingly, the claims against Dr. David in Count 1 and Wexford in Count 2 should be dismissed.

However, the Shawnee grievances, specifically 2020-11-108E and 2020-12-42E, do grieve issues related to Mary Peeks and would have put prison officials on notice of the claims against her in this lawsuit. As such, the claim in Count 1 against Peeks should be

allowed to proceed.

Finally, as to the claim in Count 3, the PLRA's exhaustion requirement does not apply to state law tort claims. 42 U.S.C. § 1997e(a) (2013) ("No action shall be brought with respect to prison conditions *under section 1983 of this title, or any other Federal law*, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.") (emphasis added); *McDaniel v. Meisner*, 617 Fed. Appx. 553, 556 n.3 (7th Cir. 2015) ("We note that the exhaustion requirements of the Prison Litigation Reform Act do not apply to state-law claims.") (citing 42 U.S.C. § 1997e(a)). That said, the Court may appropriately decline to exercise supplemental jurisdiction over a state law claim when the Court dismisses claims over which it has original jurisdiction. *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 164-65 (1997); 28 U.S.C. § 1367(c)(3). Because McGraw failed to exhaust his constitutional claims as to Dr. David and Wexford, the Court should decline to exercise supplemental jurisdiction over the state law claim in Count 3 as it pertains to those Defendants.

However, the state law claim in Count 3 against Peeks should be allowed as it is based on the same facts as the constitutional claim against her. *See Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008) (where a district court has original jurisdiction over a civil action such as a Section 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims).

## RECOMMENDATION

For the reasons stated, it is **RECOMMENDED** that the Court **ADOPT** the foregoing findings of fact and conclusions of law; **GRANT in part and DENY in part** the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 32); **DISMISS without prejudice**[4] Alfonso David, Wexford Health Sources, Inc., and Count 2; and that Count 1 against Mary Peeks and David Mitchell and Count 3 against Mary Peeks proceed.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Report and Recommendation within 14 days of service (*see* attached Notice). The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004).

DATED:  April 22, 2022

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**

---

[4] "[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).